**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TASHA MAXWELL,<br><br>                                Plaintiff,<br><br>v.<br><br>PORT AUTHORITY TRANS HUDSON CORPORATION (PATH),<br><br>                                Defendant. | Civil Action No: 21-1040 (SDW) (LDW)<br><br>**OPINION**<br><br>June 20, 2024 |

**WIGENTON**, District Judge.

Before this Court are cross-motions for summary judgment brought by Plaintiff Tasha Maxwell ("Plaintiff") and Defendant Port Authority Trans Hudson Corporation ("PATH" or "Defendant") pursuant to Federal Rule of Civil Procedure ("Rule") 56. (D.E. 38, 45.) Jurisdiction is proper pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391 and N.J. Stat. Ann. § 32:1–162. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, both motions (D.E. 38, 45) are **DENIED**.

**I.     BACKGROUND AND PROCEDURAL HISTORY**[1]

This lawsuit arises from the work-related injuries Plaintiff suffered in January 2019 and February 2021 and the disciplinary actions that followed. Specifically, Plaintiff, who at the time was an engineer for PATH, alleges that she was injured by defective equipment on two separate

---

[1] Facts cited in this opinion are drawn from Defendant's Statement of Material Facts in support of its motion for summary judgment (D.E. 38-1), Plaintiff's Response to Defendant's Statement of Material Facts (D.E. 45-3); Plaintiff's Counter Statement of Material Facts in support of her Cross Motion for Summary Judgment (D.E. 45-4), Defendant's Response to Plaintiff's Counter Statement (D.E. 47-1), and the underlying exhibits cited therein. The facts are undisputed unless noted otherwise.

occasions in January 2019 and February 2021 and that Defendant retaliated against her because she reported her injuries and the defective equipment that caused them. (D.E. 45-3 ¶¶ 7–10; D.E. 47-1 ¶¶ 7, 39.) The facts underlying the instant motions are largely in dispute.

### A. January 2019 Injury and the Alleged Retaliation

In the fall of 2018, several PATH railcars developed an issue by which air hoses in the engineer's cab seat's hydraulic system began rupturing. (D.E. 45-3 ¶ 19; D.E. 47-1 ¶ 10.) Because this issue did not affect every railcar, PATH decided not to take all trains out of service, opting instead to issue a Notice instructing its employees to take certain preventive measures. (D.E. 45-3 ¶¶ 21–23; D.E. 47-1 ¶¶ 10, 12, 13.) The Notice allegedly stated:

> All PA5 cab seat adjustment shut off valves must be kept in the closed position. When necessary, the shut off valve may be opened to adjust the seat, then closed immediately afterward. Engineers are reminded to check and ensure the cab seat shut off valve is closed in the operating cab prior to moving trains or cars. Please see the attached picture that identifies the location of the shut off valve at the bottom of the cab seat base. The shut off valve is closed when turned in the clockwise direction.

(D.E. 45-3 ¶ 21.)

PATH contends that, on November 16, 2018, it posted the Notice "in a prominent position" on a wall that employees were required to review prior to beginning their shifts. (*Id.* ¶¶ 24, 31.) Plaintiff asserts that either the Notice was posted on an overcrowded wall[2] or it was not posted at all before she began her shift on January 7, 2019. (D.E. 45-3 ¶¶ 23–24; D.E. 47-1 ¶¶ 16, 24, 26–28.) In any case, Plaintiff claims that she did not see it and thus was not aware that the shut off valve was required to be in the "off" or "closed" position. (D.E. 45-3 ¶¶ 23–24; D.E. 47-1 ¶¶ 16, 24, 26–28.)

---

[2] PATH admits that, at the time of Plaintiff's 2019 incident, the World Trade Center dispatcher's office did not have a bulletin board. (D.E. 47-1 ¶ 16.) PATH also admits that it did not give Plaintiff a briefing specific to the cab seat air hose defect. (*Id.* ¶ 17.)

2

Consequently, while Plaintiff was working on a PATH train on or about January 7, 2019, the air hose under her cab seat ruptured, causing a loud noise that lasted 15 to 20 minutes. (D.E. 45-3 ¶¶ 36–38.) The noise abated only when Plaintiff and the railcar returned to the World Trade Center, where a car inspector fixed the issue. (*Id.*) By that time, Plaintiff alleges, she had already suffered permanent hearing damage. (D.E. 47-1 ¶¶ 39–44.)

Thereafter, Plaintiff reported her injury and the defective air hose and was allegedly subjected to retaliation. On or about January 29, 2019, Defendant charged Plaintiff with violating the PATH Book of Rules because she failed to follow the instructions in the Notice. (D.E. 45-3 ¶¶ 40–41.) On or about April 16, 2019, PATH issued Plaintiff a notice of investigation, due to her allegedly excessive absenteeism[3] from 2016 through 2018. (D.E. 45-3 ¶ 49.) On March 4, 2020, a hearing pertaining to Plaintiff's absenteeism was held, and on April 4, 2020, Plaintiff was allegedly subjected to a 45-day suspension.[4] (*Id.* ¶¶ 2, 7, 9, 13, 50.) Plaintiff purportedly acknowledged responsibility for the violations in that charge and accepted a reduced disciplinary

---

[3] In or around 2017, PATH instituted a new attendance policy by which it would review its employees' three prior years of absences and subject to disciplinary action those employees who accrued 150 or more absences due to sickness over that time period. (D.E. 47-1 ¶ 6.) It is undisputed that Plaintiff, for one reason or another, missed at least 220 days of work from January 1, 2016, through December 31, 2018. (D.E. 45-3 ¶¶ 17, 49, 57–58; D.E. 47-1 ¶¶ 5–6.) Plaintiff claims that many of her absences were due to her participating in PATH's Employee Assistance Program ("EAP")—a program provided to "all employees at 'no charge,'" which helps employees "deal with personal difficulties that can upset their workday," and includes a medical therapist who assists employees in "deal[ing] with stressful situations in order to get back to work." (D.E. 47-1 ¶¶ 5–6.) Plaintiff insists that she used the EAP to cope with trauma arising out of alleged workplace harassment she faced in 2016, and that PATH should have excluded from its absence calculations any workdays she missed for that treatment. (D.E. 47-1 ¶ 6.) Defendant contends that it "excluded [from its calculations] all absences that were related to injuries on duty." (D.E. 45-3 ¶ 54.)

[4] On or around April 1, 2020, Defendant held another hearing at which Plaintiff was found to have violated PATH's rules by failing to review the Notice. (*Id.* ¶ 43.) Plaintiff received a one-day suspension for that purported violation. (*Id.*) Plaintiff cannot pursue relief in this Court for the one-day suspension she was given for failing to adhere to the Notice; she did not raise that claim in her complaint to OSHA and, thus, has not adequately exhausted her administrative remedies. *Araujo v. N.J. Transit Rail Operations, Inc.*, 708 F.3d 152, 156 n.2 (3d Cir. 2013); *see Foster v. BNSF Rwy. Co.*, 866 F.3d 962, 966–67 (8th Cir. 2017) (noting that a plaintiff cannot pursue in federal court claims that he or she omitted from the OSHA complaint). Plaintiff may, however, rely on the charges from early 2019 and the subsequent hearings in 2020 as evidence of the alleged retaliation.

penalty of a 25-day suspension from service, without pay, to be held in abeyance for a period of two years. (*Id.* ¶¶ 60.)

### B. February 2021 Injury

On or about February 8, 2021, Plaintiff was allegedly exposed to another harmful noise for an extended period of time, causing further hearing damage. (*Id.* ¶¶ 61–62; D.E. 47-1 ¶¶ 36–39.) Specifically, she claims that the speaker system in her engineer's cab emitted a loud screeching noise that lasted 45 to 50 seconds. (D.E. 47-1 ¶¶ 36–39.) The conductor on the train, Conductor O'Neill, reported hearing a similar noise, albeit for a shorter length of time and three-to-four car lengths away. (*Id.* ¶ 37; D.E. 45-3 ¶¶ 62–66.) Conductor O'Neill testified that he had previously heard a similar noise and that he believed the noise was caused by a malfunction. (D.E. 47-1 ¶ 37.)

According to Defendant, there was no discernible or reproducible defect in any of the speakers. (D.E. 45-3 ¶¶ 70–83.) Defendant insists that it conducted intensive inspections of PATH train speakers every 92 days[5], as well as less intrusive daily inspections, and that none of those inspections uncovered a defect in the intercom system. (*Id.*)

### C. Procedural History

On May 7, 2020, Plaintiff filed a FRSA complaint with the Occupational Safety and Health Administration ("OSHA"). (D.E. 3 ¶ 59; D.E. 38-1 ¶ 1.) On January 5, 2021, Plaintiff filed with the OSHA Regional Office a notice of intent to file an original action in federal court. (D.E. 3 ¶ 61.) Approximately two weeks later, Plaintiff filed a complaint in this Court, which she later amended on February 26, 2021. (D.E. 1; D.E. 3 ("Amended Complaint").) The Amended Complaint alleges three counts against Defendant: (1) violations of the Federal Employers'

---

[5] Such inspections test each function of the speaker system and ensure that all functionalities activate and that transmissions are audible. (*Id.*)

Liability Act ("FELA"), 45 U.S.C. § 51, *et seq.* (Counts I and II), and (2) violations of the Federal Rail Safety Act ("FRSA"), 49 U.S.C. § 20109 (Count III). (*See generally* D.E. 3.) Following discovery, the parties filed the instant cross-motions for summary judgment. (D.E. 38, 45.) The parties timely completed briefing.

## II.     LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphases in original). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this initial burden, the burden then shifts to the nonmovant who "must set forth specific facts showing that there is a genuine issue for trial." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288–89 (3d Cir. 2018) (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)) The nonmoving party "must present more than just 'bare assertions, conclusory allegations or

suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof[,]" then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322–23. In considering a motion for summary judgment, this Court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 572 U.S. 650, 651, 656–57 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 255).

"This standard does not change when the issue is presented in the context of cross-motions for summary judgment." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (quoting *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987)). In such cases, "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Id.* (quoting 10A Charles Alan Wright et al., *Federal Practice & Procedure* § 2720 (3d ed. 2016)).

### III. DISCUSSION

Defendant's Motion challenges the sufficiency of all three of Plaintiff's claims. This Court will address each claim in turn.

#### A. FELA Claims (Counts I & II)

The FELA is a "broad, reasonable, and comprehensive legal framework under which railroad industry employees injured by employer negligence may seek damages." *Kurns v. A.W. Chesterton Inc.*, 620 F.3d 392, 400 (3d Cir. 2010). To establish a *prima facie* claim under the FELA, a plaintiff must prove that (1) the defendant is a common carrier by railroad engaged in

interstate commerce, (2) the plaintiff was employed by the defendant and was assigned to perform duties that furthered that interstate commerce, (3) the plaintiff's injuries were sustained while employed by the common carrier, and (4) the injuries resulted from the defendant's negligence. *Felton v. S.E. Penn. Transp. Auth.*, 952 F.2d 59, 62 (3d Cir. 1991).

Defendant insists that Plaintiff has failed to carry her burden of establishing its negligence under either traditional principles of negligence or negligence *per se* for violating the Federal Locomotive Inspection Act ("LIA"). Because genuine issues of material fact persist as to Defendant's negligence, its motion for summary judgment will be denied on the issue.

1. Common Law Negligence

A plaintiff may establish a *prima facie* claim under the FELA by demonstrating, among other things, that the employer's common law negligence, in whole or in part, caused the plaintiff's injuries. *See Moncrease v. N.J. Transit Rail Operations, Inc.*, 175 F. Supp. 3d 405, 409 (D.N.J. 2016). While a plaintiff must prove the familiar elements of a common law negligence claim—duty, breach, foreseeability, and causation—the standards for determining causation under the FELA are more lenient. *See Hines v. Consolid. Rail Corp.*, 926 F.2d 262, 268 (3d Cir. 1991) ("[A] trial court is justified in withdrawing . . . issue[s] from the jury's consideration only in those extremely rare instances where there is a zero probability either of employer negligence or that any such negligence contributed to the injury of an employee." (alteration in original) (quoting *Pehowic v. Erie Lackawanna R.R.*, 430 F.2d 697, 699–700 (3d Cir. 1970))).

The instant dispute largely centers on Defendant's duty and the foreseeability of harm to Plaintiff. A railroad's "duties are measured by what is reasonably foreseeable under like circumstances—by what in light of the facts then known, should or could reasonably have been anticipated." *Gallick v. Baltimore & O.R. Co.*, 372 U.S. 108, 118 (1963) (internal quotation marks

omitted). A railroad cannot abrogate this duty; it must "make proper tests and inspections to discover dangers in the place where the employees must work, and after ascertaining their existence must take reasonable precautions for the safety of the employees," such as giving employees a timely warning of the danger. *Williams v. Atl. Coast Line R.R. Co.*, 190 F.2d 744, 748 (5th Cir. 1951); Restatement of Employment Law § 4.05 (2015) ("A timely warning may avert a danger that the employer's reasonable efforts could not eliminate."); *see also Tozzi v. Port Auth. Trans-Hudson Corp.*, No. 21-8727, 2023 WL 3614582, at *4 (D.N.J. May 24, 2024) (denying motion for summary judgment where there existed a genuine issue of material fact as to whether PATH had notice of a hazard and failed to warn the plaintiff of it). A railroad-employer need not eliminate all workplace hazards, however. Indeed, an employee has a duty to exercise reasonable care for her own safety, and an employer-railroad cannot be held liable where an employee is injured after disobeying an order or rule intended to prevent such injury. *Unadilla Valley Ry. Co. v. Caldine*, 278 U.S. 139, 142 (1928).

Here, because genuine issues of material fact permeate the circumstances surrounding the January 2019 incident, this Court cannot grant Defendant's motion. As an initial matter, it is undisputed that PATH knew about the rupturing air hoses; however, the facts regarding the warning it allegedly gave to its employees are entirely in dispute. The parties dispute where, how, and whether Defendant posted the Notice advising engineers of the defective air hoses—Defendant contends that the Notice was posted in a prominent position on a wall that Plaintiff was required to review every day before starting her shift, while Plaintiff alleges that the Notice was either posted on an over-crowded wall or never posted before the January 2019 incident. Whether Defendant provided Plaintiff with reasonable notice of the defective air hoses—*i.e.*, a reasonable

warning—bears directly on its negligence. Accordingly, construing the facts in the light most favorable to the nonmoving party, summary judgment for Defendant is not supported.

2. Whether the Locomotive Inspection Act[6] Applies to the Air Hoses

Defendant next argues that the LIA does not apply to the air hoses. This Court cannot make that determination with the limited record before it.

The LIA sets forth safety standards applicable to all locomotives, their tender, and all parts and appurtenances. 49 U.S.C. § 20701. "[T]he act imposes upon the carrier an absolute and continuing duty to maintain the locomotive, and all parts and appurtenances thereof, in proper condition, and safe to operate in active service without unnecessary peril to life or limb." *S. Ry. Co. v. Lunsford*, 297 U.S. 398, 401 (1936). The LIA's mandate does not extend to every item found aboard or affixed to a locomotive; it covers only those parts "integral or essential [to] . . . a completed locomotive, and all parts or attachments definitely prescribed by lawful order of the [Secretary of the Department of Transportation]." *Id.* It is undisputed that the regulations promulgated by the Secretary of the DOT require "[c]ab seats [to] be securely mounted and braced." 49 C.F.R. § 229.119(a).

Here, Defendant concedes that the speaker system is a part and appurtenance covered by the LIA, but it contends that the air hose mechanism is not. This Court cannot decide the issue because it has no facts before it to evaluate the function of the air hose and whether it is integral

---

[6] The LIA does not create an independent cause of action for injured parties; a plaintiff must seek relief for a violation of the LIA through a FELA claim. *See, e.g.*, *Moncrease*, 175 F. Supp. 3d at 408 (citations omitted). As explained, to prevail on a FELA claim, a plaintiff must establish the defendant's negligence, *Felton*, 952 F.2d at 62, and proof that the defendant violated the LIA establishes negligence *per se* under FELA, *Moncrease*, 175 F. Supp. 3d at 408 (quoting *Deso v. CSX Transp., Inc.*, 790 F. Supp. 2d 1, 7 (N.D.N.Y. 2011)). Thus, a plaintiff bringing a FELA claim premised on an LIA violation need not prove the traditional negligence elements. *Id.* at 408–09. She must, however, still establish causation to prevail. A plaintiff can prove causation by showing that she "suffered injuries resulting in whole or in part from the statutory violation [of LIA]." *Id.* An LIA violation may occur where a part and appurtenance of a locomotive is not "in proper condition and safe to operate without unnecessary danger of personal injury." 49 U.S.C. § 20701.

9

or essential to a completed locomotive. Accordingly, Defendant's arguments do not support summary judgment.[7]

### 3. Whether Expert Testimony Is Required

Defendant insists that Plaintiff cannot prove, without expert testimony, negligence or a violation of the LIA by failing to adequately maintain the speaker system. Although the factual record establishing that the speaker system was defective is certainly thin, this Court will permit Plaintiff's FELA claim based on the February 2021 incident to proceed without expert testimony.

While it is true that experts are often beneficial to a jury evaluating the condition of a complex device, such as the speaker system at issue here, the Third Circuit "ha[s] never foreclosed the possibility that a defective condition may be established through non-expert evidence." *Oddi v. Ford Motor Co.*, 234 F.3d 136, 159 (3d Cir. 2000). Indeed, "expert testimony is not required when the matter under consideration is simple and lack of ordinary care is obvious and within the range of comprehension of the average juror." *Id.* (quoting *Cipriani v. Sun Pipe Line Co.*, 574 A.2d 706, 710 (Pa. Super. Ct. 1990)). Here, there is testimony from Plaintiff and Conductor O'Neill—persons intimately familiar with the speaker system—sufficient to suggest that the device suffered from an obvious defect. To be sure, both witnesses testified that they heard a loud, screeching noise coming from the speaker system; Conductor O'Neill stated that he had heard this noise before; and both claimed to have heard a similar noise emitted from the speaker again in February 2021. Such evidence, viewed in the light most favorable to Plaintiff, may persuade a jury that the speaker system suffered from an obvious defect of which Defendant was aware.

---

[7] Defendant may renew its application during trial if it provides admissible evidence demonstrating that the air hose in question was not integral or essential to a completed locomotive. Plaintiff, on the other hand, is permitted to show at trial that the air hose was a part and appurtenance of the locomotive and that Defendant, by failing to properly maintain it, violated the LIA and was thus negligent *per se*.

### B. Count III: FRSA

The Federal Rail Safety Act ("FRSA") was passed "to promote safety in every area of railroad operations." 49 U.S.C. § 20101. In 2007, the FRSA was amended to include anti-retaliation measures, which "expand[ed] the scope of the anti-retaliation protections and provid[ed] enforcement authority with the Department of Labor." *Araujo v. N.J. Transit Rail Operations, Inc.*, 708 F.3d 152, 156 (3d Cir. 2013). Under the new framework, a railroad carrier "may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee if such discrimination is due, in whole or in part," to the employee's engagement in one of the numerous protected activities enumerated in the statute, which includes when an employee notifies the railroad carrier of a work-related personal injury. 49 U.S.C. § 20109(a).

To prevail on a FRSA retaliation claim, an employee must demonstrate that "(1) she engaged in protected activity; (2) the employer knew that she engaged in the protected activity; (3) she suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action." *Araujo*, 708 F.3d at 157 (quoting *Allen v. Admin. Review Bd.*, 514 F.3d 468, 475–76 (5th Cir. 2008)). In FRSA cases, "[t]he plaintiff-employee need only show that his [or her] protected activity was a 'contributing factor'[8] in the retaliatory discharge or discrimination, not the sole or even predominant cause." *Id.* (citing 48 U.S.C. § 42121(b)(2)(B)(ii)). Once the plaintiff-employee makes such a showing, "the burden shifts to the employer to demonstrate 'by clear and convincing evidence, that the employer would have taken the same unfavorable personnel action in the absence of that behavior.'" *Id.* at 157. This burden-

---

[8] "[A] contributing factor is any factor, which alone or in combination with other factors, tends to affect in any way the outcome of the decision." *Araujo*, 708 F.3d at 158 (quoting *Ameristar Airways, Inc. v. Admin. Rev. Bd.*, 650 F.3d 562, 567 (5th Cir. 2011)).

11

shifting framework is "much more protective of plaintiff-employees than the *McDonnell Douglas* framework." *Id.* at 158.

Here, construing the material facts in the light most favorable to the nonmoving party, this Court finds that Plaintiff has established a *prima facie* FRSA retaliation claim, and Defendant has failed to rebut it. To be sure, the undisputed facts show that: (1) Plaintiff reported her on-duty injury; (2) Defendant was aware of Plaintiff's reporting; (3) just weeks after Plaintiff's injury, Defendant charged her with violations arising out of the incident which caused her alleged injuries and absentee violations that occurred years prior and held disciplinary hearings related to those charges in early 2020; and (4) eventually, Defendant imposed on Plaintiff a total of 45-days suspension without pay. When viewed in the light most favorable to Plaintiff and under FRSA's relaxed standard of liability, the temporal proximity between Plaintiff's protected activity and the alleged adverse personnel actions gives rise to an inference that the protected activity could have been a contributing factor to the adverse employment action.[9] *See Araujo*, 708 F.3d at 160 (citing *Kewley v. Dep't of Health and Human Servs.*, 153 F.3d 1357, 1362 (Fed. Cir. 1992)).

## IV. CONCLUSION

For the reasons set forth above Defendant's Motion is **DENIED** and Plaintiff's Cross Motion for Summary Judgment[10] is **DENIED**. An appropriate order follows.

                                                                       /s/ Susan D. Wigenton
                                                           **SUSAN D. WIGENTON, U.S.D.J.**

---

[9] Defendant has submitted considerable evidence of Plaintiff's numerous missed workdays. While that evidence certainly may suggest that Plaintiff violated a policy and that such violation could have resulted in disciplinary proceedings, the timing of the disciplinary action for violating the attendance policy—when viewed in the light most favorable to Plaintiff—warrants against a grant of summary judgment. The jury, not this Court, is in the best position to make credibility determinations into the motives underlying Defendant's disciplinary actions against Plaintiff. *See Tolan*, 572 U.S. at 651, 656–57 (quoting *Anderson*, 477 U.S. at 255).

[10] In opposing Defendant's Motion, Plaintiff filed a cross-motion for summary judgment. The purported cross-motion is better viewed as an opposition brief, as it did not plainly move for summary judgment on any issues. Even if it did, Plaintiff presented no issues of undisputed material fact on which this Court could have granted such a motion.

Orig: Clerk
cc: Leda D. Wettre, U.S.M.J.
Parties